IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| ABDU JACKSON, | ) | 1:23-CV-00272-SPB-RAL |
| | ) | |
| Plaintiff | ) | SUSAN PARADISE BAXTER |
| | ) | United States District Judge |
| vs. | ) | |
| | ) | RICHARD A. LANZILLO |
| WELLPATH, DR. DAVID SMITH, CRNP | ) | Chief United States Magistrate Judge |
| LESLIE, CRNP SHARP, AND CRNP | ) | |
| STRICK, | ) | REPORT AND RECCOMENDATION ON |
| | ) | MOTION TO DISMISS THE COMPLAINT |
| Defendants | ) | |
| | ) | ECF NO. 16 |
| | ) | |

I.    **Recommendation**

It is respectfully recommended that the motion to dismiss Plaintiff's Complaint filed by

Defendants Wellpath, CRNP Leslie, and CRNP Sharp be GRANTED in part and DENIED in

part. It is further respectfully recommended that all claims against CRNP Strick and Plaintiff's

Eighth Amendment claim against Dr. Smith be dismissed pursuant to 28 U.S.C. §§1915(e)(2)(B)

and 1915A(b).

II.    **Report**

**A. Introduction and Procedural History**

Plaintiff Abdu Jackson brings this pro se civil rights action against Dr. David Smith, three

certified registered nurse practitioners, Leslie, Sharp, and Strick, and Wellpath, the private

healthcare company contracted by the Pennsylvania Department of Corrections ("DOC") to

provide healthcare services at State Correctional Institutions, including SCI-Forest, where

Jackson was previously incarcerated.[1] *See* ECF No. 6. Jackson alleges that he suffered from serious osteoarthritis in his left hip during his incarceration and that the Defendants acted with deliberate indifference to this serious medical needs in violation of the Eighth Amendment to the United States Constitution. He further asserts a claim against Dr. Smith for medical malpractice under Pennsylvania law. *See id.* Jackson requests compensatory and punitive damages against each Defendant. *See id.*

Wellpath, Sharp, and Leslie (collectively, "Wellpath Defendants") have filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6)[2] (ECF No. 16), a supporting brief in support of their motion (ECF No. 17), supplement to the motion (ECF No. 30), and supplemental brief (ECF No. 31).[3] Jackson was ordered to respond to the Wellpath Defendants' motion to dismiss by April 4, 2024.[4] *See* ECF No. 24. When no response was received by the deadline, the Court issued a "show cause" order directing Jackson to either explain his failure or to file his response by May 15, 2023. *See* ECF No. 33. As of the present date, Jackson has not filed a response to the motion or the Court's order.[5] The undersigned will therefore issue this Report

---

[1] Jackson commenced this action while incarcerated. He has since been paroled and is no longer in the physical custody of the DOC.

[2] No appearance has been filed on behalf of Dr. Smith or CRNP Strick. The docket reflects that a USM-285 Form and Waiver of the Service of Summons Form pursuant to Fed. R. Civ. P. 4(d) was mailed to each Defendant on December 15, 2023 (*see* ECF No. 15), but the docket does not indicate that a waiver was executed and returned by Dr. Smith or CRNP Strick. On May 16, 2024, the Court entered an Order directing Jackson to provide updated addresses to effectuate service upon Dr. Smith and CRNP Strick and advising him of the timing requirements of Fed. R. Civ. P. 4(m) and the consequences of failing to comply with those requirements. The Court further ordered that if Jackson wished to again attempt service upon Dr. Smith and CRNP Strick, he should provide the Court with an updated USM-285 Form and Waiver of the Service of Summons Form for each Defendant by May 28, 2024. The order advised Jackson that failure to file these forms by that date may result in issuance of a Notice of Call for Dismissal pursuant to Fed. R. Civ. P. 4(m) as to one or unserved Defendants.

[3] The Wellpath Defendants supplemental motion requests dismissal of Jackson's claims based on his failure to file a Certificate of Merit in accordance with the requirements of Pennsylvania Rule of Civil Procedure 1042.3. *See* ECF No. 31.

[4] The Court has directed Jackson to respond to the supplemental brief by May 23, 2024. *See* ECF No. 32.

[5] On April 11, 2024, the Clerk of the Court received and filed a letter and attachments from Jackson dated April 5, 2024 (ECF No. 27). The letter purports to describe Dr. Smith's medical treatment and the treatment Jackson has

and Recommendation on the Wellpath Defendants' motion to dismiss without the benefit of an opposition brief.

### B.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78

---

received since his release from the physical custody of the DOC. Jackson appended to this correspondence an x-ray (ECF No. 27-1) and medical records (ECF No. 27-2) from an April 3, 2024 appointment at the Orthopedic Institute of Pennsylvania. Given Jackson's pro se status, the undersigned will consider the letter and attachments as a response to the motion to dismiss. *See, e.g., Sproul v. Walmart*, 2023 WL 2895644, at *1 (W.D. Pa. Apr. 11, 2023) (citing *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005) ("in keeping with its duty to 'construe pro se complaints liberally ... [the Court] will consider' additional facts included in Sproul's filings that came after the complaint to the extent they are consistent with the allegations in his complaint.").

(1957)).

While detailed factual allegations are not required to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."
*Iqbal*, 556 U.S. at 679.

Finally, because Jackson is proceeding *pro se*, his Amended Complaint will be held to
"less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S.
519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid
claim upon which relief could be granted, it will do so despite the litigant's failure to cite proper
legal authority, confusion of legal theories, poor syntax, and sentence construction, or
unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982);
*United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

### C. Factual Allegations

For purposes of the pending motion to dismiss, the Court accepts as true the following
factual allegations of the Complaint.

Jackson was transferred to SCI-Forest in July 2021. On August 4, 2021, Jackson
complained to NP Leslie that he was "experienc[ing] extreme pain and suffering on a daily
basis" from the osteoarthritis in his left hip. ECF No. 6, ¶ 13. He also reported his medical
history to Leslie, which included a right hip replacement and a recommendation from "Dr.
Oliveno of Orthopedics Institute of Pennsylvania" that he undergo surgery for his "degenerating
left hip." *Id.* "Thereafter, Mr. Jackson underwent x-rays . . . which revealed . . . bone spurs and
total absence of cartilage." *Id.* ¶ 15. As a result, "Jackson was scheduled for physical therapy
and an outside consult" in Fall 2021. *Id.* ¶ 17. Around this time, a doctor at SCI-Forest, Dr.
Maxa, also examined Jackson and concluded that he required surgery to treat his left hip. On
August 16, "Leslie informed Mr. Jackson that he submitted a referral for" an orthopedic
specialist consultation, and "the process would take approximately six months." *Id.* ¶ 19.

When nearly ten months later Jackson had not yet received the orthopedic consultation,

he submitted a sick call request to address his "worsening condition." *Id.* ¶ 20.  On or about

June 12, 2022, he met with Defendant CRNP Sharp for "a reevaluation of his pain medication"

and to learn "the status of his orthopedic consult." *Id.* ¶ 20.  Sharp told Jackson that the

consultation request was being processed.  Jackson submitted another sick call request on July 19

and met with Sharp that day.  At this appointment, Sharp informed him that no orthopedic

consultation request had ever been submitted and represented "that the referral would be

resubmitted." *Id.* ¶ 22.

While Jackson awaited the consultation, he was in "extreme pain" and experienced

"gradual degeneration of his left hip" and "lack of mobility." *Id.* ¶ 19.  Additionally, "[s]tanding

and walking was excruciating . . . due to the grinding of" his hip bones, he "could not stand" or

"dress himself without assistance," and he only slept about two hours a night because "his sleep

was continually interrupted by his immense pain." *Id.* ¶ 22.

On February 21, 2023, Defendant Dr. Smith operated on Jackson's left hip at Clarion

Hospital.  Defendants did not adhere to Dr. Smith's "post-operative treatment" order for

"physical therapy" and "follow-ups . . . to monitor [his] rehabilitation." *Id.* ¶ 27.  For example,

the follow-up appointment scheduled for March 29, 2023 did not occur.

"After surgery, Mr. Jackson could not put weight upon his left leg, could barely walk or

stand, and developed swelling in his leg." *Id.* ¶ 30.  Jackson submitted a sick call request to

address these issues and was seen by Defendant CRNP Strick on April 7, 2023.  At this

appointment, Strick told him that it would be four months until he would receive physical

therapy.  For the next five weeks, "Jackson repeatedly submitted sick call slips and consulted

Defendant Strick about his worsened condition." *Id.* ¶ 32.

On June 14, 2023, Jackson met with Dr. Smith's Physician Assistant ("PA"). The PA "assured Mr. Jackson that corrective surgery would take place." *Id.* ¶ 33. The next day, "Sharp consulted with Mr. Jackson" and told him that his pain was caused by a half of an inch discrepancy in the lengths of his legs. Specifically, his right leg measured 39.5 inches in length while his left measured 39 inches.

"On June 28[], 2023, Mr. Jackson was approved for a second surgery." *Id.* ¶ 35. On August 2, 2023, he met with Dr. Smith at Clarion Hospital. Dr. Smith told him that he was not, in fact, scheduled for another surgery, as "his radiology test results were negative for abnormalities," and he did not know why Jackson experienced "increased pain and lack of mobility." *Id.* ¶ 37. Thirteen days later, "Jackson consulted with Defendant Strick." *Id.* ¶ 38. Strick prescribed him a shoe implant to "even out [his] gait . . . in place of corrective surgery." *Id.*

On September 11, 2023, he "met with Dr. Smith at Clarion Hospital" for the first time since his surgery. *Id.* ¶ 39. Jackson still could not "walk and ha[d] not recovered." *Id.* ¶ 42. Dr. Smith explained that his recovery would take about six months instead of the promised two months because he had made an abnormal incision at the front, instead of the side, of Jackson's thigh during surgery and installed "a shorter titanium rod" to avoid injuring his sciatic nerve. *Id.* ¶ 41. Dr. Smith also informed him that his "spine suffered a misalignment" and "recommend[ed] a shoe insert for his left leg rather than perform corrective surgery to fix [his] mistake." *Id.* ¶¶ 40, 43.

Jackson adds that throughout his incarceration at SCI-Forest, Defendants "continually discontinued [his] pain medication," thus "forcing [him] to experience a highted [sic] level of pain and suffering for . . . several days or weeks until [he] filed paperwork, that paperwork was

processed, and the defendants renewed his medication." *Id.* ¶ 23. The Defendants also

misrepresented the severity of Jackson's hip condition in his medical file. For instance, "on

October 17, 2022, Defendant Sharp reported that Mr. Jackson ambulated around the room

without difficulty and that Mr. Jackson's gait was upright without abnormalities," despite

Sharp's knowledge that this was a false depiction of Jackson's condition. *Id.* ¶ 25.

He further contends that after he learned on September 5, 2023, that he was set to be

released on February 19, each individual Defendant asked him when he "expect[ed] to be

paroled" at his appointments with them. In response to their inquiries, he replied "that he

expected to be released in February of 2024." *Id.* ¶ 44.

### D. Discussion

The Wellpath Defendants argue that the Eighth Amendment claim should be dismissed as

to all Wellpath Defendants because the facts alleged fail to show that any of them acted with

deliberate indifference to Jackson's hip condition. They also argue that his Eighth Amendment

claim is in substance a medical malpractice claim and, therefore, subject to dismissal based on

his failure to file a Certificate of Merit.

The undersigned will address these arguments in turn, as well as the sufficiency of the

Complaint to state a claim for relief against Defendants Dr. Smith and CRNP Strick pursuant to

the screening provisions set forth in 28 U.S.C. 1915(e)(2).[6]

---

[6] The Complaint is subject to *sua sponte* screening for dismissal pursuant to 28 U.S.C. § 1915(e)(2) because Jackson is proceeding in forma pauperis ("IFP"), initiated this action while incarcerated, and seeks redress from a governmental employee and entity. *See e.g.*, *Hoye v. Allegheny Cnty. Med. Dep't*, 2023 WL 7304825, at *2 (W.D. Pa. Sept. 26, 2023), *report and recommendation adopted*, 2023 WL 7124580 (W.D. Pa. Oct. 30, 2023). Section 1915(e)(2) requires the federal courts to review complaints filed by persons who are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). *See also Hoye*, 2023 WL 7304825, at *2 n.3 (citing *Douris v. Middletown Twp.*, 293 Fed. Appx. 10, 132 (3d Cir. 2008) (non-precedential) (noting that the statute's reference to prisoners in § 1915(a)(1) "appears to be a mistake" because IFP status is "afforded to all indigent persons, not just prisoners."); *Atamian v. Burns*, 236 Fed. Appx. 753, 754 (3d Cir. 2007) (non-precedential) ("the provisions of § 1915(e) apply to all in forma pauperis complaints, not simply those filed by

**1. The Eighth Amendment deliberate indifference claim should be dismissed as to all Defendants except for Leslie.**

Jackson avers that the individual Defendants acted with deliberate indifference to his osteoarthritis for the duration of his incarceration at SCI-Forest and that Wellpath maintained a policy or custom of requiring its employees to utilize cost-cutting, less efficacious treatments in deliberate indifference to his serious medical need. *See* ECF No. 6, ¶¶ 49-61. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97 (1976)) (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff must allege facts that demonstrate: (1) he had a serious medical need, and (2) acts or omissions by prison officials that reflect deliberate indifference to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Jackson's allegations regarding the severity of the osteoarthritic condition of his left hip satisfies the "serious medical need" element of his Eighth Amendment claim. The Wellpath

---

prisoners.")). The determination of whether a complaint fails to state a claim upon which relief may be granted is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

Defendants do not disagree.  ECF No. 17 ("The first element of serious medical need is met as Plaintiff's osteoarthritis was diagnosed by a physician.").  Accordingly, only the second prong of the test is at issue here: whether the treatment of Jackson's left hip manifested deliberate indifference to his serious medical needs.

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases).  Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")).  "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).  Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Id.* (quoting *Estelle*, 429 U.S. at 106).  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted).  And the Third Circuit has made clear that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging

10

inadequate medical treatment.'" *Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir.

Oct. 3, 2018) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)). Thus,

"courts have consistently rejected Eighth Amendment claims where an inmate has received some

level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018)

(quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)).

 Jackson alleges the Defendants' conduct throughout his incarceration at SCI-Forest

manifested deliberate indifference to his serious medical needs. He specifies that CRNP Leslie

"caused [him] to needlessly endure prolonged pain and suffering for" over a year when he failed

to submit an orthopedic referral request for his "first surgery . . . despite a Physician's

recommendation and other clear indications that corrective surgery was required and warranted."

ECF No. 6, ¶¶ 53, 52. Jackson contends that CRNP Sharp "intentionally made false statements

within [his] medical file . . . to minimize the severity of [his] condition," "influence the

assessment and opinion of other medical professionals," and "mislead those medical

professionals that immediate medical intervention was unnecessary." *Id.* ¶¶ 54, 55. He further

asserts that CRNP Sharp and CRNP Strick oversaw his post-surgery care and did not abide by

Dr. Smith's direction that Jackson should receive physical therapy and follow-up appointments.

Jackson alleges that as result, they did not "timely detect" his leg length discrepancy, which has

prolonged Jackson's "pain and suffering from February 21, 2023 [un]til the present day" and

worsened his condition. *Id.* ¶ 58. As for Dr. Smith, Jackson claims that he "intentionally

render[ed] a medical opinion that" "could not explain [Jackson's] post-operative complications"

and that Dr. Smith should have recommended a corrective surgery instead of a shoe insert. *Id.* ¶

59. Jackson asserts that Dr. Smith opposed this surgery to "assist[] Wellpath with its goal of cost

containment." *Id.* Finally, Jackson alleges that Wellpath "implement[ed] policies and practices

that elevate cost containment over proper and adequate care of inmates" and "require[] their employees and associates (i.e., Dr. Smith) to provide medical treatment . . . that was most cost efficient with reckless disregard to Mr. Jackson's constitutional rights." *Id.* ¶ 61.

The Wellpath Defendants respond that Jackson "cannot meet the high pleading standard to demonstrate Deliberate Indifference to a Serious Medical need." ECF No. 17, p. 13. First, they argue that the "[C]omplaint demonstrates a course of care with which [Jackson] merely disagreed." *Id.*, p. 12. Second, they argue that the Jackson "fail[s] to state the required culpable state of mind for deliberate indifference:" "malicious and wanton conduct or disregard of an excessive risk." ECF No. 17, p. 13.

> **a. The facts alleged are sufficient to state an Eighth Amendment claim against individual Defendant Leslie but not against individual Defendants Sharp or Strick.**

The allegations related to CRNP Leslie's medical care of Jackson's hip during his incarceration at SCI-Forest are as follows:  On August 4, 2021, Jackson complained to Leslie about the extreme daily pain he experienced from his osteoarthritis in his left hip and disclosed his medical history, including a previous right hip replacement and a surgeon's recommendation for left hip surgery.  Jackson subsequently underwent hip x-rays and two examinations by Dr. Maxa, and he agreed that Jackson needed hip surgery.  On August 16, Leslie told Jackson that he had submitted an orthopedic specialist consultation request, which would take about six months to process.  Ten months later, Jackson submitted a sick call request inquiring, *inter alia*, about the status of this consultation.  At Sharp's meeting with him in response to this sick call, she explained that his referral request was still being processed.  On July 19, 2022, Jackson asked again about this consultation in another sick call request.  Shortly after, he learned from Sharp that Leslie never submitted the request and that a new request had been submitted.  Jackson

underwent hip surgery about seven months after this meeting with Sharp and year and a half after Leslie said he had requested the orthopedic consultation.

Although thin, the allegations of Leslie's alleged failure to submit the orthopedic specialist consultation request suffices to support a plausible inference of deliberate indifference on the part of Leslie. The Complaint alleges enough facts to infer Leslie's knowledge of the severity of Jackson's osteoarthritis condition and his urgent need to be seen by an orthopedic specialist. Leslie's failure to file this request effectively prevented Jackson from receiving this treatment until the request was re-submitted almost a year later. Because this case is before the Court on a motion to dismiss, Leslie has no opportunity to provide a medical reason or other explanation for his alleged delay, and none can be inferred from the allegations of the Complaint. Read liberally, the Complaint allows for the inference that "necessary medical treatment [wa]s delayed for non-medical reasons," *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir.1985)), and that the prolonged period Jackson had to wait to receive an orthopedic consultation due to Leslie's delay caused him prolonged "ineffective and/or painful treatment," in violation of Jackson's Eighth Amendment rights. *Williams v. Kort*, 223 Fed. Appx. 95, 100 (3d Cir. 2007). *See also Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012) (deliberate indifference found where Defendant "knows of a prisoner's serious need for medical treatment, but . . . prevents a prisoner from receiving" the necessary treatment").

Sharp's alleged conduct, however, does not support a plausible inference of deliberate indifference. No basis exists from the facts alleged to infer that Sharp's misrepresentation of the status of Jackson's referral materially contributed to any delay in Jackson's treatment. The Complaint alleges no other conduct on the part of Sharp relating to any delay or deficiency in

treatment. Accordingly, it is recommended that the Wellpath Defendants' motion to dismiss be granted as to Defendant Sharp and denied as to Defendant Leslie. As such, the Complaint states an Eighth Amendment deliberate indifference claim against Leslie only based on his failure to submit an orthopedic referral request.

Aside from Sharp's alleged delay in submitting the consultation request, the Complaint does not allege facts to support that Jackson's medical care and treatment during his incarceration at SCI-Forest was constitutionally deficient. The allegations reflect that the medical providers addressed Jackson's concerns at each of his appointments, and examined him, formulated diagnoses, prescribed medications, and issued additional therapies. The Complaint indicates that Jackson received numerous medical examinations for his left hip osteoarthritis from Sharp, Strick, and other SCI-Forest medical staff, and that they tended to his medical needs promptly upon his requests for care. The Complaint acknowledges that Jackson received an outside consultation, x-rays, pain medication, surgery, a walker, a shoe insert, and assistance with daily tasks. It also appears that he was scheduled for physical therapy before and after his surgery.[7]

Courts have consistently held that regular assessment, treatment, and care like that provided to Jackson in this case belies an inference of deliberate indifference within the meaning of the Eighth Amendment. *See, e.g.*, *Payo v. Stechschulte*, 2022 WL 912588, at *7 (W.D. Pa. Mar. 29, 2022) (finding no deliberate indifference where "Plaintiff was seen, evaluated and treated on a regular basis and was prescribed medication as medically needed"); *Gause*, 339 Fed. Appx. at 135 (holding that the deliberate indifference standard was unmet

---

[7] The Complaint does include a vague allegation that the Defendants did not adhere to Dr. Smith's "post-operative treatment" order for "physical therapy" and "follow-ups . . . to monitor [his] rehabilitation," but Jackson alleges no facts to support that any Defendant materially deviated from Dr. Smith's post-operative instructions.

14

where "[Plaintiff's] medical records show that he was seen many times by the prison medical staff and received medicine, physical therapy, and even treatment outside of the prison," establishing that "[Plaintiff] received medical care").

Jackson contends that SCI-Forest medical staff subjected him to unnecessary pain and suffering because they did not consistently prescribe him pain medication. The Complaint lacks factual allegations sufficient to support an inference of deliberate indifference regarding the prescription or administration of his pain medication or Sharp, Strick, or Leslie's personal involvement in any failure to provide such medication. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that constitutional tort liability arises only upon a showing of "personal involvement" in the alleged wrongful conduct). Indeed, Jackson does not specify who stopped, limited, or changed his medication, which medication was involved, or the duration of any lapse or delay in his receiving medication. His allegations are too conclusory to infer that any Defendant denied or delayed his medication for nonmedical reasons or otherwise in deliberate indifference to his serious medical needs. To the extent Jackson challenges the judgment of medical personnel concerning the prescription or administration of medication, this type of "disagreement over the exact contours of [his] medical treatment" does not support an Eighth Amendment claim. *See Tillery*, 2018 WL 3521212, at *5.

Jackson next claims that Strick and Sharp manifested deliberate indifference because they did not heed Dr. Smith's post-operative instructions regarding physical therapy and follow-up appointments and, as a result, Sharp took an inordinate amount of time to diagnose his leg-length discrepancy. This bare allegation also does not support a claim of deliberate indifference. Jackson alleges only one instance when he was not taken to a post-operative appointment. Nor does he fault Sharp or Strick for this missed appointment. Jackson also fails to allege facts to

support a connection between Sharp's diagnosis and his post-surgery care. Moreover, any delay in Sharp's diagnosis would amount, at best, to "negligent treatment," which is not actionable as an Eighth Amendment claim because "medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106).

Jacksons also avers that "[u]pon information and belief, all of the Defendants actively and intentionally delayed Mr. Jackson's second surgery until the time of which [he] was expected to be paroled to avoid the costs associated with providing a second surgery." ECF No. 6, ¶ 39. The Complaint alleges no facts to support such an inference. Jackson's claim that Sharp intentionally misrepresented the severity of his condition to delay his medical treatment is also conclusory and unsupported by his factual allegations. Defendants' alleged inquiry regarding Jackson's parole date does not imply a motivation or intent to delay his care beyond his release from DOC custody. And Jackson fails to allege facts to support that Defendants' decision to treat his leg length discrepancy with a shoe insert rather than surgery was anything other than an exercise of medical judgment or that this choice "resulted in any life-threatening medical problem or serious injury." *Ball v. Famiglio*, 2011 WL 1304614, at *8 (M.D. Pa. Mar. 31, 2011). His subjective belief that corrective surgery was the proper or preferred treatment for his post-operative complications does not support a claim. Although Jackson may disagree with the course of treatment he received from Sharp and Strick, he fails to establish that their conduct amounted to a constitutional violation. *See, e.g.*, *Payo*, 2022 WL 912588, at *8 (holding that "[w]ithout more, [an inmate's] disagreement [with his medical providers' treatment decisions] does not support an Eighth Amendment claim or demonstrate deliberate indifference to his serious medical needs"); *Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (explaining that "an inmate's disagreement with prison personnel over the exercise of medical judgment does

not state a claim for relief"). As such, the deliberate indifference claims against Sharp and Strick should be dismissed.

### b. The Eighth Amendment claim against Dr. Smith should be dismissed because he is a private actor.

Jackson's Eighth Amendment claim against Dr. Smith should be dismissed because the facts alleged in the Complaint do not support a finding that he acted under color of state law. To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts to show that each defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In other words, a plaintiff cannot proceed under § 1983 against a defendant unless he alleges facts to show that the defendant acted under color of state law—i.e., was a "state actor"—and participated in the deprivation of a federal constitutional or statutory right. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis added). Private actors, on the other hand, "do not act under color of state law" and thus "are not liable under Section 1983."[8] *Gerhart v. Energy Transfer Partners, L.P.*, 2018 WL 6589586, at *9 (M.D. Pa. Dec. 14, 2018) (quoting *Luck v. Mount Airy #1, LLC*, 901 F.Supp.2d 547, 560 (M.D. Pa. 2012)).

The Complaint identifies Dr. Smith as the surgeon who operated on Jackson's hip at Clarion Hospital. A private physician who had "contracted to perform services on a part-time basis to a state prison *within the prison confines* [has been found to have] acted under of color of state law for purposes of a § 1983 claim." *Hernandez v. Palakovich*, 2010 WL 4683822, at *7

---

[8] A non-state actor can be liable under § 1983 if he conspires with a state actor. *See Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) ("Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts under color of state law for purposes of § 1983." (internal quotation marks omitted)). But Jackson has not asserted a conspiracy claim or alleged any facts to support such a claim in this case.

(M.D. Pa. Nov. 10, 2010) (emphasis supplied) (citing *West v. Atkins*, 487 U.S. 42, 56–57 (1988) (physician was a state actor where he was in "the State's employ," and "worked as a physician at the prison hospital fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated"). In this case, there are no allegations to suggest that Dr. Smith had a contractual relationship with SCI-Forest or functioned as anything other than a private physician at a public facility to which Jackson was taken for a surgical procedure that could not be performed within the prison. According to the Complaint, Jackson only met with Dr. Smith at Clarion Hospital and solely for his hip surgery and follow-up appointment. There is no basis to infer that any type of relationship existed between the State of Pennsylvania and Dr. Smith. *See id.* Because the facts alleged belie that Dr. Smith was a state actor, he is not amenable to suit under § 1983.[9] Accordingly, the Eighth Amendment claim against Dr. Smith should be dismissed.

### c.  The Complaint fails to state a *Monell* claim against Wellpath.

Jackson claims that Wellpath, as a matter of policy or custom, prioritized cost savings over care and thereby caused its employees to provide inadequate medical care and less efficacious treatment to inmates, including Jackson. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that "a municipality may be liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible.'" *Curran v. Venango County*, 2023 WL 8439274, at *4 (W.D. Pa. Nov. 2, 2023) (quoting *Monell*, 436 U.S. at 694). This rule also

---

[9] Even if Dr. Smith was a state actor, the allegations regarding medical care and treatment amount at most to medical malpractice, not deliberate indifference.

"extends to private corporations, like [Wellpath] ... that provide services pursuant to a government contract." *Id*. (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

To state a claim against "a municipality or a private corporation performing the functions of a governmental body," the plaintiff must allege that a policymaker, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Id*. (quoting source omitted). It is the plaintiff's burden "to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *B.S. v. Somerset Cty.*, 704 F.3d 250, 274–75 (3d Cir. 2013) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A policymaker is an official with "final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481 (discussing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139–40 (1988)).

To hold Wellpath liable for deliberate indifference, Jackson must plead facts sufficient to show "that there was a relevant [Wellpath] policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Id*. at 584 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). *See Sims v. Wexford Health Sources*, 635 Fed. Appx. 16, 20 (3d Cir. 2015). Company policy is created "when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *McTernan v. City of York, PA*, 564 F.3d at 658 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). This "decisionmaker" must have "'final, unreviewable discretion to make a decision or take an action,' and who is or is not a policymaker is determined by reference to state law." *Ginyard v. Del-Prete*, 2021 WL 3476601, at *5 (W.D. Pa. July 9, 2021) (quoting *Andrews*, 895 F.2d at

19

1481), *report and recommendation adopted*, 2021 WL 3472150 (W.D. Pa. Aug. 6, 2021).  When conduct cannot be attributed to company policy, it can "become[] corporate custom when it is 'so widespread as to have the force of law.'"  *Id.* (quoting *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 404).

Jackson contends that Wellpath's "policies and practices" require its employees "to provide the most cost-efficient alternative treatments available," and "avoid costly treatments (such as surgery) if possible," which "cause[d] the [D]efendants to resort to an easier course of treatment known to be ineffective."  ECF No. 6, ¶¶ 46, 47.  Jackson has not, however, alleged any facts to support any such conclusion.  *See Ginyard*, 2021 WL 3476601, at *5.  Jackson's conclusory allegation is insufficient to support a § 1983 based on a *Monell* theory of liability. *See McCloskey*, 803 Fed. Appx. at 583 (3d Cir. 2020); *Perez v. Larson*, 2020 WL 5507227, at *3 (M.D. Pa. Sept. 11, 2020) (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000) ("Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'")).  Nor can Jackson assert a § 1983 claim against Wellpath "under a theory of respondeat superior or vicarious liability."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell*, 436 U.S. at 691).  Accordingly, the Court also recommends that Jackson's deliberate indifference claim against Wellpath be dismissed.

In summary, Jackson's Eighth Amendment claim based on deliberate indifference to his serious medical needs fails and should be dismissed as to all Defendants, except Leslie.

> **d.  To the extent the Complaint asserts a medical malpractice claim against the Wellpath Defendants, that claims should be dismissed based on Jackson's failure to submit a Certificate of Merit.**

Jackson lastly asserts a medical malpractice claim based upon the medical treatment and care he received for his left hip.  Although it appears that Jackson only asserts his medical malpractice claim against Dr. Smith, the Wellpath Defendants have raised his failure to submit a Certificate of Merit ("COM") as required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure regarding any Defendant.  As such, and in keeping with the Court's duty to liberally construe a pro se litigant's Complaint, the undersigned will treat this claim as asserted against all individual Defendants.[10]

To support such a claim, Jackson must establish the following elements:

> (1) the [medical professional] owed a duty to the patient; (2) the [medical professional] breached the duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm.

*Grant v. Pennsylvania Dep't of Corr.*, 2021 WL 4312451, at *12 (W.D. Pa. Aug. 6, 2021) (quoting *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336 (E.D. Pa. 2021)), *report and recommendation adopted*, 2021 WL 3828146 (W.D. Pa. Aug. 27, 2021) .

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure generally requires a plaintiff asserting a medical or professional malpractice claim to file a Certificate of Merit ("COM") for each defendant who is the subject of the claim either with the complaint or within 60 days

---

[10] Because no counsel has entered an appearance for Dr. Smith, counsel for the Wellpath Defendants lack standing to raise the absence of a COM on his behalf.  Furthermore, because this defense requires a Defendant to give notice before a claim may be dismissed based on the absence of a COM, the Court may not rely on the absence of a COM to dismiss the claim based on its screening authority.

thereafter. *See* 231 Pa. Code Rule 1042.3(a).[11]  The COM must attest that there is a reasonable

probability that the medical or other professional care described in the complaint fell outside of

acceptable professional standards.  The Third Circuit has held that Rule 1042.3 is substantive law

that applies to professional malpractice claims based on Pennsylvania law that are asserted in

federal court. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011)

(citing *Erie R.R. v. Thompkins*, 304 U.S. 64 (1983)).  Thus, for purposes of a motion to dismiss

or motion for summary judgment, Rule 1042.3 is applied as "controlling, substantive state law."

*Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 509-10 (E.D. Pa. 2004).  "[A] plaintiff's failure to

comply with Rule 1042.3 requires dismissal of any malpractice claim." *Bennett v. PrimeCare*

*Medical*, Inc., 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14, 2018).  While the Court recognizes

the difficulties inmates face in obtaining a COM, they are not excused from the requirements of

Rule 1042.3.

     However, "Pennsylvania practice expressly provides plaintiffs with notice of Rule

1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a

---

[11] Rule 1042.3(a) of the Pennsylvania Rules of Civil Procedure states:

  (a) In any action based upon an allegation that a licensed professional deviated from an acceptable
professional standard . . . the plaintiff if not represented, shall file with the complaint or within
sixty days after the filing of the complaint, a certificate of merit signed by the . . . party that either

    (1) an appropriate licensed professional has supplied a written statement that there exists a
reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment,
practice or work that is the subject of the complaint, fell outside acceptable professional standards
and that such conduct was a cause in bringing about the harm, or . . .

    (2) the claim that the defendant deviated from an acceptable professional standard is based solely
on allegations that other licensed professionals for whom this defendant is responsible deviated
from an acceptable professional standard, or . . .

    (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the
claim.

231 Pa. Code Rule 1042.3(a).

matter is dismissed." *TranSystems Corp. v. Hughes Associates, Inc.*, 2014 WL 6674421, at *5

(M.D. Pa. Nov. 24, 2014). Rule 1042.6 of the Pennsylvania Rules of Civil Procedure states:

> (a) ... a defendant seeking to enter a judgment of non pros under
> Rule 1042.7(a) shall file a written notice of intention to file the
> praecipe and serve it on the party's attorney of record or on the
> party if unrepresented, no sooner than the thirty-first day after the
> filing of the complaint.

Pa. R. Civ. P. 1042.6(a). Under this rule, no judgment may be entered against a plaintiff for

failure to timely file a COM unless the defendant has complied with its notice requirements.

*Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior

to seeking dismissal of an action for failure to comply with the COM regime is substantive and

must be applied in federal court.").

Here, the Wellpath Defendants provided Jackson with the requisite notice of their

intention to seek dismissal on February 9, 2024. ECF No. 11. To date, Jackson has failed to

provide a COM as to CRNP Strick, CRNP Sharp, or CRNP Leslie. This failure is fatal to any

medical malpractice claim Jackson may be asserting against these Wellpath Defendants.[12] As

such, the medical malpractice claim the Wellpath Defendants should be dismissed, without

prejudice.

### E. Leave to Amend

If a complaint is vulnerable to dismissal for failure to state a claim, the Court should

permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v.*

*Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Court may deny leave to amend

---

[12] The Wellpath Defendants argue that Jackson's failure to file a COM is also fatal to his Eighth Amendment deliberate indifference claim because his allegations are merely an "attempt to constitutionalize tort law." ECF No. 31, p. 1. However, a COM is not required for an Eighth Amendment deliberate indifference to medical needs claim and therefore the absence of one provides no basis for dismissing such a claim. *See, e.g.*, *Crawford v. McMillan*, 660 Fed. Appx. 113, 116 (3d Cir. 2016). Nevertheless, for the other reasons discussed above, the deliberate indifference claim should be dismissed as to all Defendants except Leslie.

where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). And though "the grant or denial of an opportunity to amend is within the discretion of the District Court," it may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id.* These instructions are equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

In this case, it would be futile for Jackson to amend his Eighth Amendment claim against Dr. Smith and so this claim should be dismissed with prejudice. But Jackson may be able to cure the deficiencies of his Complaint to allege viable Eighth Amendment and medical malpractice claims against one or more of the Wellpath Defendants. Accordingly, these claims should be dismissed without prejudice and with leave granted to Jackson to file an amended complaint within twenty days or such other time as the Court deems appropriate following adoption of this Report and Recommendation. If Jackson fails to file an amended complaint within the specified time, the Court should enter an order dismissing with prejudice all claims in this action except the Eighth Amendment claim against Leslie and the medical malpractice claim against Dr. Smith.

### F. Conclusion

For the forgoing reasons, it is respectfully recommended that the Wellpath Defendants' motion to dismiss the Complaint for failure to state a claim (ECF No. 16) be DENIED as to the Eighth Amendment deliberate indifference claim against Leslie and GRANTED as to the Eighth Amendment claim against Sharp and Wellpath and as to the medical malpractice claim against

all Wellpath Defendants. It is further recommended that the Eighth Amendment claim against Dr. Smith and Strick be dismissed pursuant to the Court's screening authority. It is further recommended that the Eighth Amendment claim against Dr. Smith be dismissed with prejudice[13] and that all other claims recommended for dismissal herein be dismissed without prejudice and with leave to amend.

### III.    Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 7th day of August, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[13] The medical malpractice claim against Dr. Smith is unaffected by this Report and Recommendation.